[Civ. No. 1693.   Third Appellate District.—October 16, 1917.]

## M. COHN, Respondent, v. N. HARADA, Appellant.

PLEADING—ACTION FOR GOODS SOLD—TIME OF PAYMENT.—In an action for goods sold and delivered, the complaint is not demurrable for failure to allege at what time payment was to be made therefor, where the date of delivery is alleged, since the law implies payment on delivery.

ID.—SALE OF HORSES—RESCISSION OF CONTRACT—FRAUD—INSUFFICIENT OFFER TO RETURN—DIFFERENT LOCATION.—Rescission of a contract of sale of horses on the ground of false representations as to soundness and age is not effected by the giving of a notice that the horses were at a certain stable subject to the vendor's order, the horses having been delivered to the vendee at the vendor's ranch.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge Presiding.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Snyder & Snyder, for Respondent.

CHIPMAN, P. J.—The plaintiff alleges in his complaint that he sold and delivered to defendant two horses on December 11, 1916, for which defendant promised and agreed to pay plaintiff the sum of $375; that the whole amount thereof is still owing and unpaid, with interest thereon from the eleventh day of December, 1916, at the legal rate.

Defendant demurred generally to the complaint on the ground of insufficiency of facts based upon the failure of the complaint to allege at what time payment was to be made for said horses. The demurrer was overruled and defendant answered denying the averments of the complaint; admitted that on December 11, 1916, plaintiff sold to defendant two horses for the said sum, and alleged that by the contract of sale, plaintiff "warranted said horses to be sound and not over five years of age at that date, and thereby induced defendant to purchase the same, and to promise to pay the above-named sum therefor." Alleged that all of plaintiff's representations as to said horses' soundness and age were false and untrue; that, in fact, said horses were, and each of them was, over the age of five years and unsound in this, "that the hock on one of the legs of each of said horses had been wrenched, and then blistered for the purpose of removing a spavin and the effects of such unsoundness." That the purchase price agreed upon was $375 and no more, and that on said date plaintiff "gave a written bill of sale of said horses to defendant, who could not read it, wherein it was falsely and fraudulently provided that defendant should pay plaintiff the further sum of $20 in case one of said mares had a colt"; alleged that said provision for the payment of said further sum was unauthorized and formed no part of said agreement for sale, and was "falsely and fraudulently inserted therein for the purpose of injuring and defrauding defendant out of the above-named sum," and that upon the discovery by the defendant of said unauthorized provisions in said agreement, defendant "promptly rescinded the said agreement of sale and served" notice upon the plaintiff on December 20, 1916, and alleged that defendant "return said two horses to the place

from which he received them, to wit, the stables of Casper Stein,'' in the city of Stockton, ''where said two horses are now, and ever since have been, subject to plaintiff's order.'' It was stated in said notice that the two horses delivered to defendant on December 11, 1916, were not as warranted ''in respect to age and soundness, and that the insertion of $20 in the price to be paid therefor was fraudulent and unauthorized.''

The cause was tried by the court without a jury and the court made the following findings:

First: That on the eleventh day of December, 1916, plaintiff sold and delivered to defendant two horses for which defendant agreed to pay the sum alleged in the complaint, to wit, $375.

Second: That defendant has not paid said sum or any part thereof, and the whole amount is due, together with interest from the eleventh day of December, 1916, at the legal rate.

Third: That it is not true that by said contract of sale, or otherwise, plaintiff warranted said horses to be sound and not over five years of age at that date, or that he warranted said horses to be sound or over said age at that date, or that plaintiff, by said or any warranty, induced defendant to purchase the said horses or either of them.

Fourth: That it is not true that all or any of plaintiff's representations as to the soundness or age of said horses were then or otherwise false or untrue, and that it is true that one of said horses was at said time of the age of five years and one thereof was of the age of six years, and it is not true that either of said horses was unsound in the respect mentioned in defendant's answer or at all.

Fifth: That plaintiff on the fourteenth day of December, 1916, gave a written bill of sale of said horses to defendant (the date of the instrument is December 11th—the finding evidently a clerical error), which contained a provision for the payment of the further sum of $20 in case one of said mares had a colt, but it is not true that said provision was false and fraudulent, or that any provision of said contract was false or fraudulent, or that the insertion of said provision for the payment of said further sum of $20 was unauthorized or was no part of said agreement of sale, or was falsely or fraudulently inserted therein, but that it is true that said provision was inserted in said writing in accordance with the

agreement and sale and in accordance with the agreement of plaintiff and defendant, and without any fraud on the part of plaintiff.

Sixth: That it is not true that as soon as defendant, as claimed by him in his answer, "discovered that said warranty was, as so alleged by him, false in the particulars mentioned in his answer, or in any particulars, or that as soon as defendant had, as so alleged by him, discovered that plaintiff had changed the terms of said agreement in said bill of sale or had thereby attempted to defraud and cheat him out of the additional sum of $20, as so alleged by him, he promptly rescinded the said agreement; that it is not true that said defendant promptly rescinded said agreement; that it is true that defendant did not, at any time, promptly rescind said agreement; and it is not true that defendant, on the twentieth day of December, 1916, or at any other time, return said two horses to the place from which he had received them, and that it is not true that he had received said two horses, or either of them, from the stables of Mr. Casper Stein" in the city of Stockton, California.

Seventh: That it is true defendant caused to be served upon plaintiff the notice dated December 20, 1916, set forth in defendant's answer, which said notice was served upon plaintiff on said date.

As conclusions of law, the court found that plaintiff is entitled to judgment against defendant in the sum of $375, with interest at the legal rate from December 11, 1916, and for costs of suit. Judgment was accordingly entered, from which plaintiff appeals.

No special demurrer was interposed. The complaint alleged the delivery of the horses to have been made on December 11, 1916, the date on which the sale was made, and the law implies that payment should be made on delivery. The demurrer was properly overruled.

A suggestion is made in appellant's brief that the contract came within the statute of frauds, being for a price over two hundred dollars. The statute was not pleaded in any manner nor was the question raised upon the admission of testimony at any time during the trial. The defendant admitted in his answer that plaintiff sold the horses to him and alleged that a written bill of sale was given by plaintiff to defendant. The contract, in fact, was fully executed.

We have examined the evidence brought up by the record and are entirely satisfied that there is sufficient to support all the findings. Briefly, the transaction was as follows: The defendant is a Japanese farmer somewhat extensively engaged in the farming business in the island country near Stockton. He testified that he had been so engaged for several years and had bought and used many horses for farming purposes. He met the plaintiff in Stockton on December 11, 1916, and from him learned that he had two horses which he would sell; they both went to plaintiff's farm a short distance from Stockton, where defendant examined the horses very carefully, and, after much bargaining, the sale was effected, as plaintiff testified, upon the following terms: That defendant was to pay $375 for the two horses and that as plaintiff had agreed to pay $20 for the services of a stallion, should one of the mares prove to be with colt, plaintiff insisted that defendant should pay that further sum of $20 if the mare should have a colt, and this the defendant finally agreed to do. Whereupon plaintiff delivered the horses to defendant at the ranch and the parties returned to Stockton, where defendant placed the horses in care of the person in charge of the stable mentioned in the answer, with instructions to take care of them for defendant. The parties then went into a near-by store, where a clerk wrote out the agreement found in the record and plaintiff testified that it was written at the dictation of the defendant, and was as follows:

"Stockton Cal Dec 11-1916.

"M. Cohn
   "Sold to W. Harada
"1 Queen       2 mares       $375.00
"1 John
  "5 Years Old to date
  "If Mare has Colt the buyer has to pay seller $20.00.
                "Paid M. COHN
                    "Dec. 11-1916."

Defendant also at the same time signed a check made out by the same clerk on a Stockton bank in favor of plaintiff for the sum of $375, which plaintiff deposited in his bank the same or following day. Three or four days later he received a postal card from the bank notifying him that payment had been stopped. He immediately hunted up defendant and demanded to know for what reason the payment had

been stopped, and was told that it was because of the clause in the bill of sale with regard to the $20 in relation to the prospective colt. Whereupon plaintiff immediately—on December 15th—commenced the action. Five days later defendant served his written notice of rescission alleged in the complaint.

There was no evidence that plaintiff gave a warranty as to the age or soundness of the horses, nor is there evidence that defendant was induced to purchase the horses by reason of any warranty. The burden was on defendant not only to prove the warranty, but that he relied upon it.

The memorandum was written by a clerk in the store to which the parties went because neither plaintiff nor defendant could write or read in the English language except to write his name. The clerk, so far as appears, knew nothing of the terms except as he was told by one of the parties. Plaintiff testified that defendant dictated the terms, but whether he or plaintiff did it, both were present and heard what was told to the clerk and the memorandum was handed to defendant. There is no pretense that the clerk inserted anything in the memorandum other than as was dictated to him either by defendant or in his presence and hearing.

Upon the question of rescission we think, under the circumstances shown, the court was justified in finding that defendant "did not promptly rescind the agreement," and "did not return or offer to return said horses to the place where he received them." The right of rescission must be promptly exercised. (Civ. Code, sec. 1691.)

Defendant did not return or offer to return the horses to the place where they were delivered to him, which was at plaintiff's ranch. It was not sufficient tender to say to plaintiff, as the notice did, "Said horses are now at the stables of Mr. Casper Stein, at No. 47 E. Sonora Street, Stockton, California, subject to your order."

We can discover no ground for a reversal, and the judgment is therefore affirmed.

Hart, J., and Burnett, J., concurred.